**BRYAN F. MURPHY**
State Bar No. 006414
**LAURA J. MEYER**
State Bar No. 028755
Burch & Cracchiolo, P.A.
1850 N. Central Ave. Suite 1700
Phoenix, AZ 85004
602-234-9914
bmurphy@bcattorneys.com
lmeyer@bcattorneys.com

**ALBERT L. UNDERHILL**
State Bar No. 026130
Underhill Law Office P.L.L.C
7907 North 16th Drive
Phoenix, AZ 85021
602-388-4020
aunderhill2010@hotmail.com

Attorneys for Plaintiffs

UNITED STATES DISTRICT COURT

DISTRICT OF ARIZONA

| | |
|---|---|
| Optimistic Investments, LLC, a Delaware limited liability company; Michael S. Murphy, an individual; OIG Brand Management, LLC, an Arizona limited liability company,<br><br>Plaintiffs,<br><br>v.<br><br>Kangaroo Manufacturing, Inc., a Florida corporation; Justin Ligeri, an individual,<br><br>Defendants. | No.<br><br>COMPLAINT<br><br>(Jury trial demanded) |

For their Complaint, plaintiffs Optimistic Investments, LLC ("Optimistic"), and Michael S. Murphy ("Murphy") allege as follows:

**PARTIES**

1.     Plaintiff Optimistic is a Delaware limited liability company, with its principal place of business at 2261 W. Jacinto Circle, Mesa, Arizona, whose sole member is Joshua Tischer.

1      2.     Plaintiff Murphy is an individual who resides in the State of California.

2      3.     Plaintiff OIG Brand Management, LLC ("OIG"), is an Arizona limited liability company with it principal place of business at 20226 E Poco Calle, Queen Creek, Arizona, whose sole member is John Burns.

3.     Defendant Kangaroo Manufacturing, Inc. ("Kangaroo"), is a Florida corporation which, upon information and belief, is wholly owned by defendant Justin Ligeri and currently has its principal place of business in the State of Arizona.  Ben Ligeri, Justin's brother, is listed as a Vice President of Kangaroo.

4.     Defendant Justin Ligeri ("Ligeri") is an individual who, upon information and belief, is currently a resident of the State of Arizona.

**JURISDICTION AND VENUE**

5.     This action generally asserts that the defendants have infringed plaintiffs' interests in certain trademarks and copyrights, have interfered with plaintiffs' rights in those trademarks and copyrights, and have unfairly competed with plaintiff's rights through such infringement.

6.     This Court has subject matter jurisdiction over these claims pursuant to 28 U.S.C. § 1338(a), 28 U.S.C. § 1338(b), and 28 U.S.C. § 1367(a).

7.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(1) and § 1391(b)(2).

**FACTUAL BACKGROUND**

8.     Optimistic's business is the reselling of imported goods to third parties which, in turn, resell the goods via Amazon seller accounts.

9.     Murphy's business is the reselling of imported goods to third parties via Amazon seller accounts and via Walmart.com.

10.     OIG's business is the reselling of imported goods through Amazon seller accounts of affiliated entities including Divine Skin Cosmetics.

11.    On May 30, 2019, Optimistic and Kangaroo entered into an "Assignment and Reseller Agreement," a true copy of which is attached hereto as Exhibit 1 (the "Assignment and Reseller Agreement").

12.    Ligeri executed the Assignment and Reseller Agreement on behalf of Kangaroo.

13.    In the Assignment and Reseller Agreement, Kangaroo conveyed to Optimistic several United States trademark registrations, one international trademark registration (validated in Europe and China), one United States trademark application, universal product codes associated with goods Kangaroo sold in connection with the trademarks (the "UPCs"), a domain name, and the good will of Kangaroo's business, which assets were described with particularity in Exhibit A to the Assignment and Reseller Agreement.

14.    In exchange for the items Kangaroo conveyed to Optimistic, Optimistic provided Kangaroo with (a) forgiveness of a debt of $135,000, plus interest, (b) a covenant that permitted Kangaroo to purchase products from Optimistic and to resell those products, and (c) a license permitting Kangaroo to use the Marks in connection with the marketing and sale of the products it purchased from Optimistic. Exhibit 1, ¶¶ 2,3.

15.    The Assignment and Reseller Agreement also provided that the parties would execute a Trademark Assignment, a copy of which was attached to that agreement as Exhibit B.  A true copy of the executed Trademark Assignment is attached hereto as Exhibit 2.  The registered marks referenced in Paragraphs 16-19 below shall be referred to herein as the "Optimistic Registered Marks," are a subset of the registrations assigned to Optimistic in Assignment and Reseller Agreement.

16.    Optimistic owns U.S. Trademark Reg. No. 4,897,428, issued on February 9, 2016, for the mark depicted below, for the following:



> Class 28:  Novelty toy item in the nature of artificial slime; Kits consisting primarily of soft sculpture toys; Kits consisting primarily of children's multiple activity toys; Kits consisting of

3

toy modeling compound and related toy accessories; Soft sculpture toys; and Toy putty.

17. Optimistic owns U.S. Trademark Reg. No. 5,474,531, issued on May 22, 2018, for the word mark "KANGAROO," for the following:

Class 5: Adhesive bandages

Class 7: Gumball machines

Class 16: Holiday ornaments, namely, molded plastic Easter eggs

Class 25: Headgear, namely, costume hats sold through costume apparel specialty stores or costume specialty sections of online retailers

Class 28: Inflatable pool toys; Inflatable float mattresses or pads for recreational use; Amusement products, namely, inflatable balls; Inflatable float hammocks for recreational use in water; Inflatable mattresses for recreational use; inflatable ride-on toys; Inflatable toys; Sand toys; Bath toys; Children's multiple activity toys; Molded toy figures; Novelty toy items in the nature of plush emoji heads, bumpy rings, and costume jewelry; Plush toys; Soft sculpture plush toys; Squeezable squeaking toys; Stuffed toy animals; Talking toys; Toy and novelty face masks; Toy bakeware and cookware; Toy balloons; Toy brooches; Toy building blocks; Toy candy dispensers; Toy foam novelty items, namely, foam fingers and hands; Toy jewelry; Toys, namely, children's dress-up accessories; Toys; Balloons; Board games; Trampolines; Golf balls; Balls for sports; Table tennis balls; Electronic novelty toys, namely, toys that electronically record, play back, and distort or manipulate voices and sounds; Yo-yos; Toy whistles; Paper airplanes; With respect to all of the foregoing, specifically excluding any in the form of a kangaroo

Class 30: Gumballs; Candy; Lollipops; Chocolate candies; Chewing gum; Gummy candies

18. Optimistic owns U.S. Trademark Reg. No. 5,132,989, issued on January 31, 2017, for the mark depicted below, for the following:



4

Class 5: Adhesive bandages

Class 7: Gumball machines

Class 16: Stickers; Ink pads; Children's arts and crafts paper kits; Arts and craft paint kits; Arts and craft clay kits

Class 20: Holiday ornaments, namely, molded plastic Easter eggs

Class 25: Headgear, namely, costume hats sold through costume apparel specialty stores or costume specialty sections of online retailers

Class 28: Inflatable pool toys; Inflatable float mattresses or pads for recreational use; Amusement products, namely, inflatable balls; Inflatable float hammocks for recreational use in water; Inflatable mattresses for recreational use; inflatable ride-on toys; Inflatable toys; Sand toys; Bath toys; Children's multiple activity toys; Molded toy figures; Novelty toy items in the nature of plush emoji heads, bumpy rings, and costume jewelry; Plush toys; Soft sculpture plush toys; Squeezable squeaking toys; Stuffed toy animals; Talking toys; Toy and novelty face masks; Toy bakeware and cookware; Toy balloons; Toy brooches; Toy building blocks; Toy candy dispensers; Toy foam novelty items, namely, foam fingers and hands; Toy jewelry; Toys, namely, children's dress-up accessories; Toys; Balloons; Board games; Trampolines; Golf balls; Balls for sports; Table tennis balls; Electronic novelty toys, namely, toys that electronically record, play back, and distort or manipulate voices and sounds; Yo-yos; Toy whistles; Paper airplanes

Class 30: Gumballs; Candy; Lollipops; Chocolate candies; Chewing gum; Gummy candies.

19. Optimistic owns U.S. Trademark Reg. No. 5,629,199, issued on March 20, 2018, for the word mark "RESCUE GUARD," for the following:

Class 5:  Emergency survival kits comprised of first aid kits comprised of adhesive bandages, antibiotic ointments, non-prescription medications for the treatment of cuts, burns, pain and inflammation, sanitizing wipes, medicated pre-moistened

tissues, first aid instruction manuals, survival blanket, scissors, tweezers, poncho, gloves, chemically activated light sticks, dust masks, grain based food bars, drinking water in foil packs, signaling whistles housed within a container and sold as a unit.

Class 9: Safety equipment, namely, crank powered cell phone charger; crank powered radio; compass; emergency flasher, namely, emergency beacon light; signaling whistle; emergency preparedness kits containing signaling whistle with built-in compass and magnifying glass, emergency reflective mirror, a first aid kit, protective poncho, thermal blanket, paper pad, pen, leather gloves, multifunction tool comprised of a compass, radio, siren, and flashlight, waterproof document bag, personal hygiene kit, and emergency packs of water; personal emergency evacuation kits composed of the following items that are useful in an emergency, namely, signaling whistles, radios, first aid kits, drinking water in foil packs, granola-based snack bars, freeze-dried food packages, dust and/or respirator masks, emergency ponchos, thermal blankets.

20.     The Assignment and Reseller Agreement also provided that promptly after the execution of the agreement, Optimistic would "record the Trademark Assignment with the United States Patent and Trademark Office and the World Intellectual Property Office and other foreign trademark offices, as appropriate."  Exhibit 1, ¶ 7.e.

21.     On June 17, 2019, Optimistic recorded a Trademark Assignment with the United States Patent and Trademark Office ("USPTO") with respect to the federal trademark registrations and trademark application Optimistic acquired from Kangaroo. A true copy of the Notice of Recordation of Assignment Document recording the assignment is attached hereto as Exhibit 3.

22.     Subsequent to the execution of the Assignment and Reseller Agreement, Optimistic has consistently marketed and sold to resellers products marked with the trademarks it acquired from Kangaroo, including the Optimistic Registered Marks.

23.     Exhibit A to the Assignment and Reseller Agreement listed among the assets conveyed to Optimistic the Glow Star Marks, including the Glow Star Registrations, namely: U.S. Trademark Reg. No. 5,433,422 for ILLUMIGLOW 2.0

1   issued on March 27, 2018, in Class 16 (children's wall stickers and murals)and U.S.

2   Trademark Reg. No. 5,433,444 for ULTRA-GLOW SUPER STARS issued on April 3,

3   2018, in Class 16 (children's wall stickers and murals).

4        24.    Murphy had used the Glow Star Marks under color of right, and a dispute

5   arose between the parties regarding their entitlement to use of the Glow Star Marks.

6        25.    To resolve this dispute, on June 11, 2020, Optimistic, Kangaroo, and

7   Murphy entered into a Settlement Agreement and General Release ("Settlement

8   Agreement") pursuant to which Optimistic assigned to Murphy the Glow Star

9   Registrations for the Glow Star Marks, and Kangaroo disclaimed any ownership interest

10  in those marks and terminated its license with Optimistic to utilize those marks and to

11  resell products associated with those marks. A true copy of the Settlement Agreement is

12  attached hereto as Exhibit 4.

13       26.    Ligeri executed the Settlement Agreement individually and on behalf of

14  Kangaroo.

15       27.    In connection with the execution of the Settlement Agreement, Optimistic

16  also executed a Trademark Assignment in connection with the two registrations (the

17  "Murphy Trademark Assignment").  A copy of the Murphy Trademark Assignment is

18  attached as Exhibit 5.

19       28.    On June 12, 2020, Murphy recorded the Murphy Trademark Assignment

20  against the Glow Star Registrations at the USPTO.

21       29.    Murphy markets and sells products with the ILLUMIGLOW 2.0 and

22  ULTRA-GLOW SUPER STARS marks on Amazon.com and Walmart.com.

23       30.    On November 4, 2019, Kangaroo and third party Cheyenne Brands, LLC

24  ("Cheyenne Brands") entered into a Copyright Assignment and Transfer Agreement

25  ("Copyright Assignment Agreement") in which Kangaroo assigned to Cheyenne Brands

26  a series of works registered with the United States Copyright Office, which works were

27  listed with specificity in Exhibit A to the Copyright Assignment Agreement. A true copy

28  of the Copyright Assignment Agreement is attached hereto as Exhibit 6.

31. Ligeri executed the Copyright Assignment Agreement on behalf of Kangaroo and on behalf of Cheyenne Brands.

32. Cheyenne Brand's business involved the sale of imported goods to third parties via Amazon seller accounts.

33. On October 26, 2021, ownership of the entire membership interest in Cheyenne Brands Holdings, LLC, was conveyed to Lightning Quick LLC, pursuant to a Bill of Sale in proceedings under Chapter 7 of the U.S. Bankruptcy Act captioned *In re Justin Ligeri*, Case No. 2:20-BK-13051-DPC in the United States Bankruptcy Court for the District of Arizona. A true copy of this Bill of Sale is attached hereto as Exhibit 7.

34. As a result of the Bill of Sale, all assets of Cheyenne Brands Holdings, LLC, and its subsidiaries including Cheyenne Brands, LLC, including but not limited to the works assigned under the Copyright Assignment Agreement and Cheyenne Brand's Amazon seller accounts, were then controlled by Lightning Quick, LLC, whose sole member is Joshua Tischer.

35. On November 5, 2021, all intellectual property of Cheyenne Brands including the copyrights under the Copyright Assignment Agreement was conveyed to Optimistic pursuant to the terms of an Assignment Agreement, a true copy of which is attached hereto as Exhibit 8.

36. OIG imports products including "Star Dust Ultra Glow Stars," ASIN B076NXVQ4X, for which it holds Trademark Registration No. 6219636 with the U.S. Patent and Trademark Office, "Sidewalk Chalk," ASIN , and "Ping Pong Balls," ASIN, which it markets through an Amazon seller account under the name of Divine Skin Cosmetics which is also owned by John Burns.

37. On December 6, 2021, Joshua Tischer began receiving a series of reports from Amazon that specific products which were being sold through 's Amazon seller accounts for Optimistic, Lightning Quick, and Cheyenne Brands ("Optimistic Amazon Accounts") were being delisted based on claims made by Kangaroo through its counsel that Optimistic and its affiliates were infringing copyrights allegedly owned by Kangaroo.

1  Some 15 complaints have been reported through December 14, 2021. A summary of the

2  complaints reported by Amazon is attached hereto as Exhibit 9.

3        38.    On December 6, 2021, and again on December 14, 2021, Michael Murphy

4  received reports from Amazon that his product entitled "Ultra-Glow Super Stars," ASIN

5  B0711T1VHS, was being delisted based on claims made by Kangaroo through its counsel

6  that he was infringing copyrights allegedly owned by Kangaroo. Copies of the e-mails

7  received from Amazon are attached hereto as Exhibit 10.

8        39.    On December 19, 2021, Amazon notified Divine Skin Cosmetics that the

9  product entitled "Star Dust Ultra Glow Stars," ASIN B076NXVQ4X, was being delisted

10  based on claims made by Kangaroo through its counsel that it violated copyrights

11  allegedly owned by Kangaroo. A copy of the e-mail received from Amazon is attached

12  hereto as Exhibit 11.

13        40.    On December 21, 2021, Amazon notified Divine Skin Cosmetics that the

14  product entitled "OIG Brands Outdoor Sidewalk Chalk," ASIN B07BKSSVZN, was

15  being delisted based on claims made by Kangaroo through its counsel that it violated

16  copyrights allegedly owned by Kangaroo. A copy of the e-mail received from Amazon is

17  attached hereto as Exhibit 12.

18        41.    The copyright complaints made to Amazon regarding products being sold

19  through Optimistic's Amazon Accounts are invalid for reasons including the following:

20  (a) Optimistic is the rightful owner of the copyrighted works at issue pursuant to the terms

21  of the Copyright Assignment Agreement attached hereto as Exhibit 6, which copyrighted

22  works were then assigned by Cheyenne Brands to Optimistic by the Assignment

23  Agreement dated November 5, 2021, attached hereto as Exhibit 8 ("Optimistic IP

24  Assignment Agreement"); (b) certain of the works which are the subject of defendant's

25  complaints to Amazon were newly created independently and   are not related to or

26  derivative of the works referenced in the Copyright Assignment Agreement or Optimistic

27  IP Assignment Agreement; (c) certain of the works which are the subject of defendant's

28  complaints to Amazon are not registered with the United States Copyright Office.

42. The copyright complaints made to Amazon regarding products being sold through Murphy's Amazon seller accounts are invalid because Optimistic has licensed Murphy to use those works, which were originally assigned to Cheyenne Brands pursuant to the terms of the Copyright Assignment Agreement attached hereto as Exhibit 6, and which were in turn assigned to Optimistic pursuant to the Assignment Agreement dated November 5, 2021, attached hereto as Exhibit 8.

43. The copyright complaints made to Amazon regarding "Star Dust Ultra Glow Stars" and "OIG Brands Outdoor Sidewalk Chalk" being sold by OIG through its affiliate's Amazon seller account are invalid because there are no recorded copyrights related to these products.

44. Defendants' wrongful submission of complaints to Amazon has resulted in the delisting of products which were being sold by Optimistic, Murphy and OIG through Amazon.com, many of which are seasonal in nature. Plaintiffs estimate that this has resulted in a loss of sales exceeding $500,000 to date.

45. Defendants were aided and abetted in their submission of wrongful complaints to Amazon by their counsel at the law firm Nolan Heimann, LLP ("Nolan Heimann"), specifically including David Schnider, who is listed as the complaining party on the majority of these complaints. By correspondence dated December 8, 2021, a true copy of which is attached hereto as Exhibit 13, counsel for Optimistic demanded that Nola Heimann retract these complaints. By correspondence dated December 9, 2021, a true copy of which is attached hereto as Exhibit 14, Nolan Heimann refused this request.

46. On or about the time that Kangaroo began submitting the complaints to Amazon referenced above defendants launched websites captioned kangaroomanufacturinginc.com and kangaroomanufacturingincorporated.com through Shopify.com which utilized without license or authorization trademarks owned by Optimistic including the Optimistic Registered Marks and the Glow Stars Registrations. On December 14, 2021, Domains By Proxy confirmed that Justin Ligeri was the owner of the kangaroomanufacturinginc.com website.

47.   This is not the first time Ligeri acting through an entity he controlled has tried to clawback and exercise dominion over the Optimistic Registered Marks and the Glow Star Registrations.  Justin Ligeri previously attempted to use a fabricated agreement to deprive Optimistic of the Trademark Registrations and additional assets Optimistic acquired from Kangaroo as listed Exhibit A to the Assignment and Reseller Agreement.

48.   As a result, on April 7, 2021, Optimistic sued Cheyenne Brands, LLC – then owned and controlled by Ligeri ("Cheyenne-Ligeri") --  in the Superior Court of the State of Arizona in and for Maricopa County, *Optimistic Investment, Inc. v. Cheyenne Brands, LLC and Justin Ligeri*, CV2021-005669 (the "Arizona Action"), based on a purported assignment document, claiming that as of November 14, 2020, Optimistic had conveyed all of the Marks, domain names and UPCs listed in Exhibit A to the Assignment and Reseller Agreement and associated good will to Cheyenne-Ligeri.

49.   On May 25, 2021, the Arizona state court entered an Amended Stipulated Permanent Injunction to which Cheyenne-Ligeri[1] and Optimistic stipulated providing, in relevant part, as follows:  "Plaintiff [Optimistic] became the owner of intellectual property described in Exhibit 'A' to this Stipulated Permanent Injunction under the terms of an Assignment and Reseller Agreement dated May 30, 2019, and remains the owner of that intellectual property." The Glow Star Registrations were excluded. A copy of the Amended Stipulated Permanent Injunction is attached hereto as Exhibit 15. Exhibit A to the Stipulated Permanent Injunction is the same document as Exhibit A to the Assignment and Reseller Agreement.

50.   In another action, *Ligeri v. Optimistic Investments, LLC, et al.*, Case 1:21-cv-11654-LTS (D. Mass.) ("Massachusetts Litigation"), Optimistic, as a counterclaim plaintiff, seeks to enforce its ownership rights to the trademarks and intellectual property in Exhibit A to the Assignment and Reseller Agreement against Justin Ligeri's brother, Ben Ligeri, and companies under his control who had sued Optimistic based on yet

---

[1] Only Cheyenne and Optimistic stipulated to the permanent injunction because the case was stayed as to Justin Ligeri because of his ongoing bankruptcy proceeding.

1    another fabricated document – this time a purported earlier assignment document from

2    Kangaroo to Ben Ligeri ("Purported Assignment Agreement").

3    51.    In the Purported Assignment Agreement, Kangaroo allegedly assigned to

4    Ben Ligeri the same trademark registrations, trademark application, UPCs, domain name,

5    and good will that Kangaroo assigned to Optimistic in the Assignment and Reseller

6    Agreement. Although it was not recorded at the USPTO until two and a half years later,

7    the Purported Assignment bore a date of February 15, 2019.

8    52.    A Preliminary Injunction in favor of Optimistic and against Ben Ligeri in

9    the Massachusetts Litigation was entered on December 14, 2021.  In part the Preliminary

10    Injunction orders that Ben Ligeri and the named entities "are preliminarily enjoined from

11    claiming ownership of any of the Marks [assigned to Optimistic in the Assignment and

12    Reseller Agreement], including without limitation by filing any infringement reports,

13    claims, or complaints or taking any other actions with respect to the Amazon Brand

14    Registry and Amazon Seller accounts of Optimistic, Murphy, or any of their licensees or

15    authorized parties, that prevent or impede the sale of any goods marked with the Marks."

16    A true copy of the Preliminary Injunction is attached hereto as Exhibit 16.

COUNT I
DECLARATORY JUDGMENT PURSUANT TO 28 U.S.C. § 2201
(By Optimistic re Copyrights)

17

18

19    53.    Plaintiffs reallege and incorporate by reference all preceding allegations of

this Complaint as though set forth fully herein.

20

21    54.    Optimistic contends pursuant to 17 U.S.C. § 204 that it is the owner of and

22    holds all right, title and interest in and to the copyrighted works set forth in Exhibit A to

23    the Copyright Assignment Agreement attached hereto as Exhibit 6 (as subsequently

24    assigned in the Optimistic IP Assignment Agreement)  and has the exclusive right to use

of those copyrighted works pursuant to 17 U.S.C. § 106, and that other products marketed

25

26    through its related Optimistic Amazon Accounts utilize new uncopyrighted images that

it created.

27

28

55.     As demonstrated by defendants' submission of repeated claims of copyright infringement to Amazon pleaded in paragraph 37 above, defendants by their actions are causing Optimistic to be deprived of its copyrights and rights to exclusive use and are claiming copyright protection for works that have not been registered with the United State Copyright Office.

56.     Accordingly, an actual case or controversy has arisen between Optimistic and defendants regarding the ownership of the copyrights listed in Exhibit A to Copyright Assignment Agreement attached hereto as Exhibit 6 such that the Court may declare the rights of the parties pursuant to 28 U.S.C. § 2201 that Optimistic is the owner of and holds all right, title and interest in and to the copyrighted works set forth in Exhibit A to the Copyright Assignment Agreement (as subsequently assigned in the Optimistic IP Assignment Agreement attached hereto as Exhibit 8) and that defendants' complaints of copyright infringement to Amazon are wrongful.

## COUNT II
## DECLARATORY JUDGMENT PURSUANT TO 28 U.S.C. § 2201
### (By Optimistic re Trademarks)

57.     Plaintiffs reallege and incorporate by reference all preceding allegations of this Complaint as though set forth fully herein.

58.     Optimistic owns all right, title and interest in and to the trademark registrations, trademark application, UPCs and the domain name and associated good will listed in Exhibit A to the Assignment and Reseller Agreement, including the Optimistic Registered Marks, but excluding the Glow Stars Registrations which are owned by Murphy.

59.     As demonstrated by defendants' persistent infringing use of the Optimistic Registered Marks on their websites pleaded in paragraph 46 above, defendants are acting in contravention of Optimistic's ownership interests in the Optimistic Registered Marks and listed in Exhibit A to the Assignment and Reseller Agreement, and defendants dispute Optimistic's rights to the intellectual property described in Exhibit A to the Assignment

1   and Reseller Agreement attached hereto as Exhibit 1 (except the Glow Stars

2   Registrations).

3        60.   Accordingly, an actual case or controversy has arisen between Optimistic

4   and defendants regarding the ownership of the trademarks and associated intellectual

5   property described in Exhibit A to the Assignment and Reseller Agreement attached

6   hereto as Exhibit 1 (except the Glow Stars Registrations) such that the Court may declare

7   the rights of the parties pursuant to 28 U.S.C. § 2201 that Optimistic owns all right, title

8   and interest in and to the trademark registrations, trademark application, UPCs and the

9   domain name and associated good will listed in Exhibit A to the Assignment and Reseller

10  Agreement, including the Optimistic Registered Marks (but excluding the Glow Stars

11  Registrations) and that defendants' claim of copyright infringement to Amazon are

12  wrongful.

13                              COUNT III
                DECLARATORY JUDGMENT PURSUANT TO 28 U.S.C. § 2201
14                         (By Murphy re Copyright)

15       61.   Plaintiffs reallege and incorporate by reference all preceding allegations of

16  this Complaint as though set forth fully herein.

17       62.   As demonstrated by their complaints to Amazon which were reported to

18  Murphy on December 6, 2021, and December 14, 2021, described in paragraph 38 above,

19  defendants contend that Murphy's use of copyrighted works related to "Ultra-Glow Super

20  Stars," ASIN B0711T1VHS, infringes copyrights held by defendants.

21       63.   Murphy contends that he is rightfully utilizing copyrights related to "Ultra-

22  Glow Super Stars," ASIN B0711T1VHS, as an authorized licensee of Optimistic, since

23  those works were assigned to Cheyenne Brands pursuant to the terms of the Copyright

24  Assignment Agreement attached hereto as Exhibit 6, and were in turn assigned to his

25  licensor, Optimistic, pursuant to the Assignment Agreement dated November 5, 2021,

26  attached hereto as Exhibit 8.

27       64.   Accordingly, an actual case or controversy has arisen between Murphy and

28  defendants regarding the ownership and the right to use of the of the copyrights for "Ultra-

1  Glow Super Stars, such that the Court may declare the rights of the parties pursuant to 28

2  U.S.C. § 2201 that Murphy is rightfully utilizing copyrights related to "Ultra-Glow Super

3  Stars," ASIN B0711T1VHS, as an authorized licensee of Optimistic, since those works

4  were assigned to Cheyenne Brands pursuant to the terms of the Copyright Assignment

5  Agreement attached hereto as Exhibit 6, and which were in turn assigned to Optimistic

6  pursuant to the Assignment Agreement dated November 5, 2021, attached hereto as

7  Exhibit 8 and that the defendants' claims of copyright infringement to Amazon are

8  wrongful.

9                          COUNT IV
            DECLARATORY JUDGMENT PURSUANT TO 28 U.S.C. § 2201
10                       (By OIG re Copyright)

11      65.    Plaintiffs reallege and incorporate by reference all preceding allegations of

12  this Complaint as though set forth fully herein.

13      66.    As demonstrated by their complaint to Amazon which were reported to OIG

14  and its affiliate on December 19, 2021, pleaded in paragraph 39 above, defendants

15  contend that OIG's marketing of "Star Dust Ultra Glow Stars," ASIN B076NXVQ4X,

16  infringes copyrights held by defendants.

17      67.    As demonstrated by their complaint to Amazon which were reported to OIG

18  and its affiliate on December 21, 2021, pleaded in paragraph 39 above, defendants

19  contend that OIG's marketing of "OIG Brands Outdoor Sidewalk Chalk," ASIN

20  B07BKSSVZN, infringes copyrights held by defendants.

21      68.    OIG contends that it is rightfully utilizing trademarks related to "Star Dust

22  Ultra Glow Stars" and that there are no registered copyrights associates with this product

23  which could form the basis of a legitimate claim of copyright infringement.

24      69.    Accordingly, an actual case or controversy has arisen between OIG and

25  defendants regarding the defendants' claim that OIG and its affiliate are infringing

26  copyrights for "Star Dust Ultra Glow Stars," ASIN B076NXVQ4X, and "OIG Brands

27  Outdoor Sidewalk Chalk," ASIN B07BKSSVZN, such that the Court may declare the

28  rights of the parties pursuant to 28 U.S.C. § 2201 that defendants do not hold registered

1  copyrights for theses products and that defendants' claims of copyright infringement to

2  Amazon are wrongful.

3                                           COUNT V
   TRADEMARK INFRINGEMENT IN VIOLATION OF 15 U.S.C. § 1114
4                         (By Optimistic as to all defendants)

5        70.     Plaintiffs reallege and incorporate by reference all preceding allegations of

6  this Complaint as though set forth fully herein.

7        71.     As alleged in paragraph 46 above, defendants launched websites captioned

8  kangaroomanufacturinginc.com  and  kangaroomanufacturingincorporated.com  which

9  utilized without license or authorization at least the Optimistic Registered Marks.

10       72.     The defendants' use of marks confusingly similar to Optimistic's registered

11  marks is likely to cause confusion, deception, and mistake by creating the false and

12  misleading impression that the defendants' goods are manufactured or distributed or

13  licensed by Optimistic, or are associated or connected with Optimistic, or have the

14  sponsorship, endorsement, or approval of Optimistic.

15       73.     The marks used by the defendants to offer for sale and sell products referred

16  to herein are confusingly similar to Optimistic's federally registered marks in violation of

17  15 U.S.C. § 1114.

18       74.     The defendants' activities are causing and, unless enjoined by this Court,

19  will continue to cause a likelihood of confusion and deception of members of the trade

20  and public, and additionally to cause injury to Optimistic's good will and reputation, for

21  which Optimistic has no adequate remedy at law.

22       75.     The defendants' actions demonstrate an intentional, willful, and malicious

23  intent to trade on the good will associated with Optimistic's Registered Marks to

24  Optimistic's irreparable harm.

25       76.     Defendants' actions will continue to harm Optimistic unless the defendants'

26  actions are enjoined, as even if the plaintiffs are successful in having the sites taken down

27  through complaint procedures the defendants will continue their pattern of conduct in

28  opening new infringing websites.

77.    The defendants' actions have caused and are likely to continue causing substantial injury to the public and to Optimistic, and Optimistic is entitled to injunctive relief and to recover the defendants' profits, actual damages, enhanced profits and damages, costs, and reasonable attorneys' fees under 15 U.S.C. §§ 1114, 1116, and 1117.

COUNT VI
UNFAIR COMPETITION IN VIOLATION OF 15 U.S.C. § 1125(a)
(By Optimistic as to all defendants)

78.    Plaintiffs reallege and incorporate by reference all preceding allegations of this Complaint as though set forth fully herein.

79.    The defendants' use of marks confusingly similar, if not identical, to Optimistic's registered marks as pleaded in paragraph 46 above is likely to cause confusion, deception, and mistake by creating the false and misleading impression that the defendants' goods are manufactured or distributed or licensed by Optimistic, or are associated or connected with Optimistic, or have the sponsorship, endorsement, or approval of Optimistic.

80.    The defendants have made false representations, false descriptions, and false designations of, on, or in connection with their goods in violation of 15 U.S.C. § 1125(a).

81.    The defendants' activities are causing and, unless enjoined by this Court, will continue to cause a likelihood of confusion and deception of members of the trade and public, and additionally to cause injury to Optimistic's good will and reputation, for which Optimistic has no adequate remedy at law.

82.    The defendants' actions demonstrate an intentional, willful, and malicious intent to trade on the good will associated with Optimistic's registered marks to Optimistic's irreparable harm

83.    The defendants' actions have caused and are likely to continue causing substantial injury to the public and to Optimistic, and Optimistic is entitled to injunctive relief and to recover the defendants' profits, actual damages, enhanced profits and

1  damages, costs, and reasonable attorneys' fees under 15 U.S.C. §§ 1116, 1117, and
2  1125(a).

3                                    COUNT VII
   TRADEMARK COUNTERFEITING IN VIOLATION OF 15 U.S.C. § 1114(1)(a)
4                          (By Optimistic as to all defendants)

5      84.    Plaintiffs reallege and incorporate by reference all preceding allegations of
6  this Complaint as though set forth fully herein.

7      85.    The defendants' use of marks identical with or substantially
8  indistinguishable from Optimistic's registered marks to offer for sale, distribute, and/or
9  sell products for which the Optimistic's registered marks were registered (the
10 "Counterfeit Marks") violated 15 U.S.C. § 1114(1)(a).

11     86.    The defendants intentionally used the Counterfeit Marks in connection with
12 the sale, offering for sale, or distribution of goods in violation of 15 U.S.C. § 1114(1)(a).

13     87.    The defendants provided goods necessary to the commission of a violation
14 specified in 15 U.S.C. § 1117(b)(1), with the intent that the recipient of the goods would
15 put the goods to use in committing the violation.

16     88.    The defendants' use of the Counterfeit Marks, described herein, was willful.

17     89.    The defendants' use of the Counterfeit Marks is causing and, unless
18 enjoined by this Court, will continue to cause confusion and deception of members of the
19 trade and public and to cause irreparable harm to Optimistic, for which Optimistic has no
20 adequate remedy at law.

21     90.    Optimistic is entitled to injunctive relief and to recover from defendants
22 three times the defendants' profits or three times Optimistic's damages, whichever
23 amount is greater, together with a reasonable attorney's fee, or statutory damages under
24 15 U.S.C. § 1117(c).

25                                   COUNT VIII
   TRADEMARK INFRINGEMENT IN VIOLATION OF 15 U.S.C. § 1114
26                        (By Murphy as to all defendants)

27     91.    Plaintiffs reallege and incorporate by reference all preceding allegations of
28 this Complaint as though set forth fully herein.

92.     As alleged in paragraph 46 above, defendants launched websites captioned kangaroomanufacturinginc.com and kangaroomanufacturingincorporated.com which utilized without license or authorization the Glow Star Registrations which were conveyed to Murphy under the terms of the Settlement Agreement attached hereto as Exhibit 4.

93.     The defendants' use of marks confusingly similar if not identical to the Glow Star  Registrations is likely to cause confusion, deception, and mistake by creating the false and misleading impression that the defendants' goods are manufactured or distributed or licensed by Murphy, or are associated or connected with Murphy, or have the sponsorship, endorsement, or approval of Murphy.

94.     The marks used by the defendants to offer for sale and sell products referred to herein are confusingly similar to the Murphy Registrations in violation of 15 U.S.C. § 1114.

95.     The defendants' activities are causing and, unless enjoined by this Court, will continue to cause a likelihood of confusion and deception of members of the trade and public, and additionally to cause injury to Murphy's good will and reputation, for which Murphy has no adequate remedy at law.

96.     The defendants' actions demonstrate an intentional, willful, and malicious intent to trade on the good will associated with the Glow Star Registrations to Murphy's irreparable harm.

97.     The defendants' actions have caused and are likely to continue causing substantial injury to the public and to Murphy, and Murphy is entitled to injunctive relief and to recover the defendants' profits, actual damages, enhanced profits and damages, costs, and reasonable attorneys' fees under 15 U.S.C. §§ 1114, 1116, and 1117.

COUNT IX
UNFAIR COMPETITION IN VIOLATION OF 15 U.S.C. § 1125(a)
(By Murphy as to all defendants)

98.     Plaintiffs reallege and incorporate by reference all preceding allegations of this Complaint as though set forth fully herein.

99.     The defendants' use of marks confusingly similar to the Murphy Registrations as described in paragraph 46 above is likely to cause confusion, deception, and mistake by creating the false and misleading impression that the defendants' goods are manufactured or distributed or licensed by Murphy, or are associated or connected with Murphy, or have the sponsorship, endorsement, or approval of Murphy.

100.    The defendants have made false representations, false descriptions, and false designations of, on, or in connection with their goods in violation of 15 U.S.C. § 1125(a).

101.    The defendants' activities are causing and, unless enjoined by this Court, will continue to cause a likelihood of confusion and deception of members of the trade and public, and additionally to cause injury to Murphy's good will and reputation, for which Murphy has no adequate remedy at law.

102.    The defendants' actions demonstrate an intentional, willful, and malicious intent to trade on the good will associated with Murphy's registered marks to Murphy's irreparable harm.

103.    The defendants' actions have caused and are likely to continue causing substantial injury to the public and to Murphy, and Murphy is entitled to injunctive relief and to recover the defendants' profits, actual damages, enhanced profits and damages, costs, and reasonable attorneys' fees under 15 U.S.C. §§ 1116, 1117, and 1125(a).

COUNT X

INTENTIONAL INTERFERENCE WITH CONTRACTUAL RELATIONSHIPS

(By Murphy as to all defendants)

104.    Plaintiffs reallege and incorporate by reference all preceding allegations of this Complaint as though set forth fully herein.

105.    Murphy has established business relationships and the expectation of future business relationships with customers through his seller accounts on Amazon.com and Walmart.com.

106.    Defendants' use of the Glow Star  Registrations which were assigned to him under the terms of the Settlement Agreement attached hereto as Exhibit 4 on websites

1   captioned kangaroomanufacturinginc.com and kangaroomanufacturingincorporated.com

2   interfere with his established and prospective contractual relationships with customers

3   who purchase or would purchase his products including "ULTRA-GLOW SUPER

4   STARS."

5        107.   Defendants' complaints to Amazon that Murphy is infringing copyrights

6   related to "Ultra-Glow Super Stars" which have been licensed to him by Optimistic

7   interfere with his established and prospective contractual relationships with customers

8   who purchase or would purchase his products including "ULTRA-GLOW SUPER

9   STARS."

10        108.   The defendants' actions demonstrate an intentional, willful, and malicious

11   intent to trade on the good will associated with the Glow Stars Registrations to Murphy's

12   irreparable harm.

13        109.   As a direct and proximate result of defendants' intentional interference with

14   Murphy's existing and prospective contractual relationships Murphy has suffered

15   compensatory damages in the form of lost profits which would have been earned but for

16   defendants' tortious misconduct, all in an amount to be proved at trial.

17        110.   Murphy is further entitled to recover from the defendants his taxable costs

18   incurred in prosecuting this claim pursuant to A.R.S. § 12-341, and his attorneys' fees in

19   this matter arising out of contract pursuant to A.R.S. § 12-341.01(A).

20        111.   Because the defendants' conduct was willful, wanton and performed with

21   the intent to cause financial injury to Murphy, Murphy is further entitled to recover

22   punitive damages in an amount to be proved at trial.

23                         COUNT XI

     INTENTIONAL INTERFERENCE WITH CONTRACTUAL RELATIONSHIPS
24                 (By Optimistic as to all defendants)

25        112.   Plaintiffs reallege and incorporate by reference all preceding allegations of

26   this Complaint as though set forth fully herein.

27

28

                          21

1   113.   Optimistic has established business relationships and the expectation of

2   future business relationships with customers through the Optimistic Amazon Accounts

3   on Amazon.com.

4   114.   Defendants' use of the Optimistic Registered Marks on websites captioned

5   kangaroomanufacturinginc.com and kangaroomanufacturingincorporated.com interfere

6   with Optimistic's established and prospective contractual relationships with customers

7   who purchase or would purchase his products marked with the KANAGAROO marks

8   including the Optimistic Registered Marks.

9   115.   Defendants' complaints to Amazon that Optimistic is infringing copyrights

10  that Optimistic actually owns interfere with Optimistic's established and prospective

11  contractual relationships with customers who purchase or would purchase Optimistic

12  products marked with the KANGAROO marks including the Optimistic Registered

13  Marks.

14  116.   The defendants' actions demonstrate an intentional, willful, and malicious

15  intent to trade on the good will associated with the Optimistic Registered Marks and to

16  Optimistic's irreparable harm.

17  117.   As a direct and proximate result of defendants' intentional interference with

18  Optimistic's existing and prospective contractual relationships Optimistic has suffered

19  compensatory damages in the form of lost profits which would have been earned but for

20  defendants' tortious misconduct, all in an amount to be proved at trial.

21  118.   Optimistic is further entitled to recover from the defendants his taxable

22  costs incurred in prosecuting this claim pursuant to A.R.S. § 12-341, and Optimistic's

23  attorneys' fees in this matter arising out of contract pursuant to A.R.S. § 12-341.01(A).

24  119.   Because the defendants' conduct was willful, wanton and performed with

25  the intent to cause financial injury to Optimistic, Optimistic is further entitled to recover

26  punitive damages in an amount to be proved at trial.

27
28

COUNT XII
INTENTIONAL INTERFERENCE WITH CONTRACTUAL RELATIONSHIPS
(By OIG as to all defendants)

22

120.   Plaintiffs reallege and incorporate by reference all preceding allegations of this Complaint as though set forth fully herein.

121.   OIG and its affiliate, Divine Skin Cosmetics, has established business relationships and the expectation of future business relationships with customers through the Divine Skin Cosmetics Amazon Account on Amazon.com.

122.   Defendants' complaints to Amazon that OIG and its affiliate, Divine Skin Cosmetics, is infringing the defendants' copyrights interferes with OIG's established and prospective contractual relationships with customers who purchase or would purchase "Star Dust Ultra Glow Stars," ASIN B076NXVQ4X, and "OIG Brands Outdoor Sidewalk Chalk," ASIN B07BKSSVZN.

123.   The defendants' actions demonstrate an intentional, willful, and malicious intent to trade on the good will associated with the "Star Dust Ultra Glow Stars" and "OIG Brands Outdoor Sidewalk Chalk, to the irreparable harm of OIG and its affiliate.

124.   As a direct and proximate result of defendants' intentional interference with Optimistic's existing and prospective contractual relationships OIG has suffered compensatory damages in the form of lost profits which would have been earned but for defendants' tortious misconduct, all in an amount to be proved at trial.

125.   OIG is further entitled to recover from the defendants his taxable costs incurred in prosecuting this claim pursuant to A.R.S. § 12-341, and OIG's attorneys' fees in this matter arising out of contract pursuant to A.R.S. § 12-341.01(A).

126.   Because the defendants' conduct was willful, wanton and performed with the intent to cause financial injury to OIG, OIG is further entitled to recover punitive damages in an amount to be proved at trial.

JURY TRIAL DEMAND

Plaintiffs hereby request jury trial of all claims and issues in this matter which are triable to a jury.

WHEREFORE, plaintiffs pray that the Court enter the following relief against the defendants and each of them:

(1)   Enter judgment in favor or Optimistic, Murphy and OIG on all of their affirmative claims;

(2)   Declare that Optimistic is the owner of and holds all right, title and interest in the trademark registrations, trademark application, UPCs and the domain name listed in Exhibit A to the Assignment and Reseller Agreement, and associated good will, except U.S. Trademark Reg. No. 5,437,444 and U.S. Trademark Reg. No 5,434,444;

(3)   Declare that Optimistic is the owner of and holds all right, title and interest in the copyrights described in Exhibit A to the Copyright Assignment Agreement and that defendants' claims of copyright in infringement to Amazon were wrongful;

(4)   Declare that Murphy is the owner of and holds all right, title and interest to U.S. Trademark Reg. No. 5,437,444 and U.S. Trademark Reg. No 5,434,444 and that defendants' complaints of copyright infringement to Amazona were wrongful;

(5)   Declare that defendants have no registered copyrights associated with "Star Dust Ultra Glow Stars," ASIN B076NXVQ4X, or "OIG Brands Outdoor Sidewalk Chalk," ASIN B07BKSSVZN, and that their complaints of copyright infringement to Amazon was wrongful;

(6)   Enter temporary restraining orders, preliminary injunctive relief and permanent injunctive relief enjoying defendants and their agents and representatives, and all persons in active concert or participation with them from:

    (a)   Claiming to any person or entity that they are the owner of the trademark registrations, trademark application, UPCs and the domain name listed in Exhibit A to the Assignment and Reseller Agreement, and the good will associated therewith;

(b)    Licensing or otherwise authorizing any third party to use any of the marks assigned by Kangaroo to Optimistic in the Assignment and Reseller Agreement;

(c)    Claiming to any person or entity that they are the owner of the copyrights described in Exhibit A to the Copyright Assignment Agreement;

(d)    Licensing or otherwise authorizing any third party to use any of the copyrights assigned by Kangaroo in the Copyright Assignment Agreement;

(e)    Claiming to any person or entity that they are the owner of copyrights associated with "Star Dust Ultra Glow Stars," ASIN B076NXVQ4X, or "OIG Brands Outdoor Sidewalk Chalk," ASIN B07BKSSVZN;

(f)    Interfering with the ownership of Optimistic's Amazon Brand Registry Account respecting the marketing of products described in Exhibit A to the Assignment and Reseller Agreement;

(g)    Lodging complaints against Optimistic's Amazon Brand Registry Account linked with any of the marks or branded products described in Exhibit A to the Assignment and Reseller Agreement or any Amazon Seller Account that is linked with Optimistic, or other companies owned by Joshua Tischer, provided, however, that the foregoing does not apply to U.S. Trademark Reg. No. 5, ,444 and U.S. Trademark Reg. No 5,434,444 which Optimistic conveyed to Michael Murphy.

(h)    Interfering with the ownership of Murphy's Amazon Brand Registry Account respecting the marketing of products related to U.S. Trademark Reg. No. 5,437,444 and U.S. Trademark Reg. No 5,434,444;

(i)    Lodging complaints against Murphy's Optimistic's Amazon Brand Registry Account linked with any of the marks or branded products related to U.S. Trademark Reg. No. 5,437,444 and U.S. Trademark Reg. No 5,434,444;

(j)    Interfering with the ownership of the Amazon Brand Registry Account operated by OIG or its affiliate, Divine Skin Cosmetics, respecting the marketing of "Star Dust Ultra Glow Stars," ASIN B076NXVQ4X, and "OIG Brands Outdoor Sidewalk Chalk," ASIN B07BKSSVZN.

(k)    Lodging complaints against the Amazon Brand Registry Account operated by OIG or its affiliate, Divine Skin Cosmetics, respecting the marketing of "Star Dust Ultra Glow Stars," ASIN B076NXVQ4X, and "OIG Brands Outdoor Sidewalk Chalk," ASIN B07BKSSVZN.

(l)    Require the defendants to within 30 days of such order, file with the Court a report in writing under oath setting forth in detail the manner and form in which they complied with this Order, including a specific inventory and identity of the location of all the products and goods bearing any of the trademarks set forth Exhibit A to the Assignment and Reseller Agreement in the possession, custody or control of each defendant.

(7)    Compel the defendants to account to Optimistic for any and all profits derived by defendants from the sale or distribution of products in connection with which the defendants infringed one or more of Optimistic's registered marks;

(8)    Award Optimistic up to three times the defendants' profits pursuant to 15 U.S.C. § 1117(b);

(9)   Award Optimistic up to three times its damages for trademark infringement pursuant to 15 U.S.C. § 1117(a) and 15 U.S.C. § 1117(b);

(10)   Award Optimistic statutory damages for trademark infringement pursuant to 15 U.S.C. § 1117(c);

(11)   Compel the defendants to account to Murphy for any and all profits derived by defendants from the sale or distribution of products in connection with which the defendants infringed one or more of Murphy's registered marks;

(12)   Award Murphy up to three times the defendants' profits pursuant to 15 U.S.C. § 1117(b);

(13)   Award Murphy up to three times its damages for trademark infringement pursuant to 15 U.S.C. § 1117(a) and 15 U.S.C. § 1117(b);

(14)   Award Murphy statutory damages for trademark infringement pursuant to 15 U.S.C. § 1117(c);

(15)   Award Murphy compensatory damages based on defendants' intentional interference with his actual and prospective contractual relationships;

(16)   Award Murphy punitive damages based on defendants' intentional interference with his actual and prospective contractual relationships;

(17)   Award Optimistic compensatory damages based on defendants' intentional interference with his actual and prospective contractual relationships;

(18)   Award Optimistic punitive damages based on defendants' intentional interference with his actual and prospective contractual relationships;

(19)   Award OIG compensatory damages based on defendants' intentional interference with its actual and prospective contractual relationships;

(20)   Award OIG punitive damages based on defendants' intentional interference with its actual and prospective contractual relationships;

(21)   Award Optimistic its costs and attorney's fees; and

(22)   Award Murphy his costs and attorney's fees; and

(23)   Award OIG its attorneys' fees and costs; and

1    (24)    Award such other relief as the Court deems proper.

2    DATED this 27th day of December, 2021.

3                                        **BURCH & CRACCHIOLO, P.A.**

4                                        **By: /s/ Bryan F. Murphy**
                                         1850 N. Central Avenue, Suite 1700
5                                        Phoenix, AZ 85004

6                                        **UNDERHILL LAW OFFICE,**
                                         **P.L.L.C.**
7
                                         **By: /s/ Albert L. Underhill**
8                                        7907 North 16th Drive
                                         Phoenix, AZ 85021
9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28